# EXHIBIT B

**STATE OF TEXAS – DENTON COUNTY COURTS**

**_____District Court**

| | |
|---|---|
| Mr. Michael Moates | Case No.: 21-6417-362 |
| Plaintiff | |
| v. | **Original Petition** |
| Lone Star College System, | **Jury Trial Demanded** |
| Dr. Hrisafia Bekiaris, | |
| Dr. Jess Kelly, and | |
| Leslieann Thomas | |
| Defendants | |

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiff, Michael Moates, Pro Se, and files this Original Petition, complaining against Lone Star College, Dr. Hrisafia Bekiaris, Dr. Jess Kelly, and Leslieann Thomas (collectively Defendants) and in support thereof would respectfully show the court as follows:

**I. PARTIES**

1. Plaintiff Michael Moates is an individual who resides in Denton County, Texas.

2. Defendant Lone Star College System (LSC) is an institution of higher education. Lone Star College System can be served at Nancy Molina, Associate General Counsel, 5000 Research Forest Drive, The Woodlands, Texas 77381.

- 1 -

3. Defendant Dr. Hrisafia Bekiaris is professor in the Biology Department at Lone Star College System and can be served at Nancy Molina, Associate General Counsel, 5000 Research Forest Drive, The Woodlands, Texas 77381.

4. Defendant Dr. Jess Kelly is the Dean of Instruction at Lone Star College System and can be served at Nancy Molina, Associate General Counsel, 5000 Research Forest Drive, The Woodlands, Texas 77381.

5. Defendant Leslieann Thomas is a disability services coordinator at Lone Star College System and can be served at Nancy Molina, Associate General Counsel, 5000 Research Forest Drive, The Woodlands, Texas 77381.

## II. JURISDICTION AND VENUE

3. The damages sought in this case exceed the minimal jurisdictional limits of the Denton County Judicial Courts.

4. Venue is proper in Denton County, Texas, because a suit for damages for violation of the American with Disabilities Act and Section 504 of the Rehabilitation Act of 1972 shall be brough in which the Plaintiff resided at during the time of the cause of action. Venue is proper because the Plaintiff resided in Denton County at the time of the cause of action.

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 & 1345 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12133.

## III. JURY DEMAND

6. Plaintiff demands a trial by jury.

## IV. FACTUAL SUMMARY

7. On 12 July 2021, the Plaintiff applied via the Apply Texas portal to attend Lone Star College as a non-degree seeking student to obtain pre-requisite requirements required to attend nursing

school. He was accepted and registered for classes including Biology 2401 with Dr. Hrisafia Bekiaris.

8. On 15 July 2021, the Plaintiff requested disability accommodations pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

9. On 19 July 2021, Leslieann Thomas scheduled an appointment with the Plaintiff to meet regarding disability services.

10. On 20 July 2021, Leslieann Thomas agreed to provide the Plaintiff with disability accommodations. These accommodations were as follows: Dictionary Use in Exam/Quizzes, Extra Time 2.00x, Occasional Short Breaks During Testing, Testing Center Use, Medical Device/Equipment, and No Spelling Reductions.

11. The Plaintiffs other professor in Nutrition immediately put the accommodations into place however, the other professor Dr. Hrisafia Bekiaris began creating barriers to the Plaintiffs education and did not put the disability accommodations in place.

12. At the onset of the class Dr. Bekiaris posted a video on the syllabus. She stated in her video "a webcam is required for this course" despite no in person class meetings or video assignment. The only purpose of the camera is so the professor can record the students. She states this is a "online course." She states that she has given student numerous 0's and F's. She says if you have a problem within the course to go to Dr. Christopher Allen… this is important to note because I did go to Dr. Allen and never not once heard from him. She states that when your complete exams and quizzes that you must allow her to watch you through your webcam and audio. She says the software they use to record you uses artificial intelligence to track you and will flag you for cheating if it thinks your cheating. Nowhere does LSC disclose this when you apply, and frankly the thought that if I look away from my screen during a 2-hour exam will cause me to be

flagged for cheating is terrifying and only add to my testing anxiety. She says the test will flag you for cheating if it sees shadows… so my moving lights, my pets, etc would likely cause me to be flagged for cheating. She admits that they are using software with facial recognition without consent. If you don't use the facial recognition, you are "suspect" she says. Again, LSC takes your money for the course but does not tell you in advance then blackmails you by saying do it or we will fail you. She says you must keep your eyes on the screen or you will be flagged for cheating. Again, this is unreasonable for a normal person. If you look away for a second you could be flagged for cheating… what if someone needs to use the restroom? Oh she says you can't get up to go to the bathroom during a 3:20 minute exam. She requires you to not only let her watch you but now you have to also show her inside your home.

13. On 21 July 2021, Leslieann Thomas and Dr. Hrisafia Bekiaris agreed that the Plaintiff could do his quizzes/exams at the local library. However, Dr. Bekiaris refused to remove the lockdown browser to allow the Plaintiff access to his medical equipment. In addition, to protect from viruses, the library does not allow for the download of third-party software.

14. On 22 July 2021, Dr. Bekiaris raised a complaint about the Plaintiff going to the library after she had previously agreed this was acceptable. She said, "Just curious why Mrs. Thomas suggested the library for you to take your exams instead of going to a LSC testing center." The Plaintiff explained to her that LSC advertises itself as and online college and that since the Plaintiff did not live in the area, he was unable to go to the testing center. She then blamed the Plaintiff by saying "having you in Fort Worth really makes this difficult."

15. On that same day the Plaintiff asked her what she would like him to do regarding the exams with no response.

16. On 22 July 2021, the Plaintiff sent an email to Leslieann Thomas and Dr. Bekiaris raising concerns about the fact that there were 5 exams due at midnight and the accommodations promised to him by the college were still not in place. The college discriminated against the Plaintiff based on disability when they held out that he should be rushed to complete these exams when every other student was given two weeks to complete them. Still currently, the accommodations were not in place.

17. On 22 July 2021, Leslieann Thomas raised the idea that "It might be possible to get around having Michael pay for proctoring by having our Assessment Center here on campus to proctor the exam through WebEx.  Just a thought you all might want to consider. You would need to speak with the Assessment Center, but I know they've proctored remotely before." She is referencing the fact that the Plaintiff had asked local colleges if they would proctor for him, and the fees were going to be $40 for each exam x5 exams a week. The Plaintiff was open to this idea.

18. On 23 July 2021, after the exams were already due and the professor had caused the Plaintiff a significant amount of stress, she emailed him to let him know "extended your exam until Wednesday at midnight." Keep in mind this was still only one week where every other student got two weeks. Again, discrimination based on disability.

19. On 23 July 2021, Dr. Bekiaris told the Plaintiff via email "Everything has been extended until Wednesday for you." The Plaintiff understood that everything had been extended.

20. On 23 July 2021, the Plaintiff brought up that he could not complete the lab quizzes and assignments because they were timing out when he took "Occasional Short Breaks" as promised in his accommodations. The professor responded with she told the Plaintiff he was out of luck because they used a third-party software and "That is nothing I can change or have control over."

21. On 24 July 2021, Dr. Bekiaris informed the Plaintiff that he would have to seek her permission to take his "lab practical" and "test" "exams" even though every other student did not have to do that. This was again discrimination and an extra requirement because he had a disability.

22. On 25 July 2021, Dr. Bekiaris stated in an email "Hi Michael. Multiple attempts aren't additive. Therefore, if you start attempt 1, take a break and the system times you out for inactivity; when you start attempt 2 none of that initial work is saved. If you again, take a break from attempt 2 and are timed out again, the cycle continues. So regardless of how many attempts I give you, taking an extended break will just have you start back at square 1. Also, that work has been posted on Connect since day 1of the semester. You have had 9 days of opportunity to start slowly chipping away at it. The vast majority of it has not been completed. As stated in the syllabus, late work is not accepted." A couple of issues… 1) this is a direct contradiction to the accommodations the college promised him 2) it is discrimination based on the ADA and Section 504. 3. She was now saying that she would not accept the work even though previously she had said "Everything has been extended until Wednesday for you."

23. On 25 July 2021, the Plaintiff requested "I am requesting the complete removal of this class from my record this term and the subsequent enrollment next term in a class with a different professor. I do not intend to be charged given I have already paid for this class." The Plaintiff also requested "speak with" Dr. Allen the department chair who to date the Plaintiff has never been able to talk to.

24. On 26 July 2021, Dr. Bekiaris, said "Hi Michael. I was speaking about the quizzes, exam and lab practical. There was no reason to extend due dates for Connect work since it is not proctored or timed. Yes, taking extended breaks will time you of out Connect. That is nothing I can change

or have control over." But when she emailed the Plaintiff previously, she used the word "everything." She also incorrectly says it's not timed but it is timed. Clearly if the test times out when you invoke your right to take a break it is timed.

25. On 26 July 2021, Dr. Bekiaris stated "You will be receiving a call from the assessment center in regard to setting up your quizzes and exams." This never happened. In fact, the Plaintiff made numerous attempts to contact the testing center only to get their voicemail.

26. On 27 July 2021, Dr. Bekiaris changed her statement and said "Rey from the Assessment Center has assured me that an email was sent to you yesterday with time scheduling options. They have not heard back from you." This again was inaccurate and misleading. The Plaintiff never received an email from the testing center. Then she changed her statement again and said "Michael, it was sent to your D2L email account." The Plaintiff is not aware of a "D2L email account" and told the professor.

27. On 28 July 2021, The Plaintiff notified in writing to the dean that he intended to seek litigation regarding the matter if the accommodations were not put into place. He also notified Braxton Fonner, Ops Manager – General Counsel. After a lengthy conversation explaining the issue, Mr. Fonner promised to work with all parties to come to a resolution and assured the Plaintiff he would call him on 29 July 2021 in the early afternoon to give him an update. That did not happen.

28. On 28 July 2021, after numerous emails requesting assistance to the Department Chair, the Dean, Disability Services, and the professor, the dean finally responded to the Plaintiff. He said "I have scheduled a call at 2pm to attempt to come up to speed on all of the nuances of this situation and will be better prepared to respond after having the opportunity to hear from those on the call.  It may be another day before I can respond to you as I am not feeling well at all and

have scheduled a medical appointment. I will make sure that I attend the 2pm call and hope to be better able to understand the breadth of the issue then." This call took place with no input from the Plaintiff regarding his disability.

29. On 29 July 2021, despite Mr. Fonner's promises he passed the case off to Associate General Counsel Nancy Molina. Ms. Molina stated for the Plaintiff to "continue working with the offices and persons you have worked with thus far as they are in the best position to assist you." These same offices has been ignoring the Plaintiff's request for help. When the Plaintiff responded to Ms. Molina stating that that is not what Mr. Fonner had promised she responded with "Understood." But no other solutions.

30. On 29 July 2021, Mr. Moates sent a final demand letter to the dean, disability services, the professor, the system office, and the general counsel requesting accommodations and to notify them of the pending lawsuit if not. Ms. Molina responded with "Someone from LSC-UP will contact you soon with their decision regarding your proposed resolution." This in direct contradiction to her telling the Plaintiff to contact them.

31. On 29 July 2021, the dean emailed the Plaintiff stating "We have received your request for a refund and to be dropped from your BIOL 2401 course based on perceived issues related to accommodations. After an extensive review it has been determined that we have fully met the standard of reasonable accommodation and as a result your request has been denied. I wish you success in your future academic endeavors." He copied Zack Copeland, Vice President, Lone Star College. Again, none of the accommodations are in place. All of this has caused the Plaintiff significant harm including time loss in a class, emotional distress, physical distress, financial harm, and academic harm.

## V. CAUSES OF ACTION

**A. Biometric Data – (Tex. Bus. & Com. Code § 503.001)**

1. At no time has Lone Star College provide informed consent required for the collection of biometric identifiers as required by law.

2. Lone Star College uses a system that has "facial recognition," "tracks" you, and determines whether you are cheating, there is a shadow, you use the restroom.

**B. Violation of the Americans with Disabilities Act**

1. The Plaintiff notified the college of his disability. The college accepted his disability and put in writing that he had accommodations. These include ADHD, Sleep Apnea, Anxiety, Insomnia, Depression, Asthma, and Dysgraphia.

2. The college did not apply the accommodations that were promised in writing.

3. After notification the college still did not put the accommodations into place.

4. The central question in this case concerns whether LSC violated the ADA and Chapter 121 by failing to provide proper auxiliary aids and services, make reasonable accommodations, and maintaining a policy and practice of failing to make its course materials accessible.

5. On July 12, 1990, Congress enacted the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

6. Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

7. Plaintiff has anxiety, dysgraphia, ADHD, depression, Insomnia, Sleep Apnea, and Asthma and therefore qualified individuals with disabilities within the meaning of 42 U.S.C. § 12102, et seq.

8. Defendant LSC has an obligation to comply with Title III of the ADA.

9. By refusing to provide an inaccessible website, mobile app, and course materials, LSC denies disabled students full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations that LSC makes available to its non-disabled customers. Accordingly, LSC is systematically violating the ADA by denying disabled customers the benefits of access to or the full and equal enjoyment of its website, mobile app, course materials, and other course related materials.

10. LSC's violations are ongoing and continue to deny accessibility to disabled students.

11. Under Title III of the ADA, Defendant is committing discrimination by failing:

> to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities; and

> to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A)(ii) and (iii).

12. By refusing to modify its website, mobile app, and course materials, even when Plaintiff have made reasonable requests and have lodged complaints, and it would not be an undue burden for LSC or alter the nature of its services, LSC has denied Plaintiff and continues to deny Plaintiffs, on the basis of their disability, the same access to LSC goods, services, facilities, privileges, advantages, and/or accommodations as the access provided to individuals without disabilities.

13. The policy of Texas "is to encourage and enable persons with disabilities to participate in the social and economic life of the state, to achieve maximum personal independence, to become

gainfully employed, and to otherwise fully enjoy all public facilities within the state." Tex. Hum. Res. Code § 121.001.

14. Tex. Hum. Res. Code § 121.002. Chapter 121 requires that public facilities must make "reasonable accommodations in policies, practices, procedures." Tex. Hum. Res. Code 121.003(d)(2). Defendants has failed to make reasonable accommodations in its policies, practices, and procedures for Plaintiff and other students who have disabilities to properly use complete coursework.

## VI. DAMAGES

29. All previous allegations are incorporated herein by reference.

30. Mr. Moates is entitled to nominal damages, general damages, and actual damages for the Defendants' libel, including compensation for injury to his reputation.

31. Mr. Moates is entitled to exemplary damages pursuant to Chapter 41 of the Texas Civil Practices and Remedies Code because the Defendant acted with malice. The evidence is shown in the degrading comments, public humiliation, and open statements showing the intend to harm.

## VII. DEMAND TO PRESERVE EVIDENCE

32. Plaintiff demands that all Defendants preserve all evidence that is or may be relevant to the claims and defenses of the allegations made in this complaint including all electronic data of any kind.

## VIII. REQUEST FOR DISCLOSURE

33. Plaintiff requests that defendant disclose the information and material described in Texas Rule of Civil Procedure 194.2 within the time required by the rule.

## IX. DISCOVERY

34. Discovery Level 2 of Texas Rules of Civil Procedure applies to this Petition.

**IX. PRAYER**

WHEREFORE PREMISES CONSIDERED, Plaintiff Michael Moates asks the court to issue a citation for each Defendant to appear and answer, and that Plaintiff be awarded a judgement against Defendants for the following:

a) Nominal damages;

b) General damages;

c) Actual damages;

d) Special damages;

e) Exemplary damages;

f) Pre and post judgement interest;

g) declaratory relief

and

a) Declare that LSC has violated the ADA and Chapter 121;

b) Permanently enjoin LSC from violating the ADA and Chapter 121;

c) Issue an injunction requiring LSC to remove the BIOL 2401 course completely from the Plaintiff record and issue him a complete refund for the course.

d) Issue any further relief as the court may deem appropriate

Respectfully Submitted,

/s/ Michael S. Moates

Michael Moates, Pro Se

Michaelsmoates@gmail.com

817-999-7534

2700 Colorado Boulevard #1526, Denton, TX 76210

- 12 -